UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Elder Leodani Vasquez Salgado )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>LADEON FRANCIS, Acting Field Office Director,<br>US Immigrations and Customs Enforcement,<br>KRISTI NOEM, U.S. Secretary of Homeland Security,<br>TODD LYONS, Acting Director U.S. )<br>Immigrations and Customs Enforcement,<br>and PAM BONDI,<br>Attorney General, *in their official capacities*<br>)<br>Respondents. )<br>) | Case No.1:25 cv 06524<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Elder Leodani Vasquez Salgado is a citizen of Honduras. She resides in New York City.

2. Elder identifies as a transwoman, and she currently uses the name Sheila Bracamontes instead of Elder because this name more closely aligns with her identity as a transgender woman.[1]

3. On August 7, 2025, ICE detained Ms. Bracamontes when she appeared for a scheduled check-in at the ICE Office at 26 Federal Plaza, New York City, New York. They have done so with the intention of deporting her to Honduras where she faces persecution and torture as a transgender woman, and as a survivor of sexual violence.

4. By detaining Ms. Bracamontes and seeking to deport her, before she has had the opportunity to adjudicate her asylum claim, ICE's actions violate Ms. Bracamonte's

---

[1] The client uses the pronouns "she/her" and the name "Sheila Bracamontes" in her everyday life, and, so, Counsel refers to her in this letter with this pronoun and name.

rights under the Fifth Amendments of the U.S. Constitution, the INA, the Administrative Procedures Act, and its own federal regulations.

5. Accordingly, this Court should declare ICE's actions unlawful, order Ms. Bracamonte release, enjoin Respondents from deporting Ms. Bracamonte prior to adjudication of her claims.

## PARTIES

6. Petitioner is a resident of New York City who is detained at 26 Federal Plaza in New York City and facing deportation to Honduras by the New York Field Office for ICE.

7. Respondent Ladeon Francis is named in his official capacity as the Acting Field Office Director of the New York Field Office for ICE within the United States Department of Homeland Security. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Plaintiff. Respondent Francis's address is New York ICE Field Office Director, 26 Federal Plaza, 7th Floor, New York, New York 10278.

8. Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity. She is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to detain and remove the Petitioner; and as such is a custodian of the Petitioner. Respondent Noems's address is U.S. Department of Homeland Security, Office of the General Counsel, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-0485.

9. Respondent Todd Lyons is the Acting Director of ICE. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States; routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a custodian of the Petitioner. His address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington, DC 20536-5900.

10. Respondent Pam Bondi is Attorney General of the United States. In this capacity, she routinely transacts business in the Southern District of New York; is responsible for the

administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(g) (2007); and as such is a custodian of the Petitioner. Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

## JURISDICTION

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2241, Article I, §9, cl. 2 (the Suspension Clause) and Article III of the U.S. Constitution. Ms. Bracamontes is in custody for the purposes of habeas jurisdiction because she is detained which requires her to comply with the Government's orders "at any time and without a moment's notice." *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., California*, 411 U.S. 345, 351 (1973)); *see also Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003).

12. An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief. *Id.* §§ 2201, 2202.

13. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651. In order to preserve this court's jurisdiction, an order should be issued that Petitioner not be transferred out of the Southern District of New York pursuant to the All Writs Act.

## VENUE

14. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2), 1391(e)(1), and 1402(b) because a substantial part of the events giving rise to Petitioner's claims occurred in this district; Petitioner resides in this District; Petitioner is detained in this District; Respondent Francis resides in this district; and the New York ICE Field Office is the office directing Peitioner's detention in this District and imminent deportation.

## REQUIREMENTS OF 28 U.S.C. § 2243

15. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

16. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## FACTS

17. Ms. Bracamontes is a transgender woman from Honduras who survived repeated attacks of violence in her community and school because she was transgender and was often perceived as an extremely feminine gay boy. She is illiterate, unable to read or write, and suffers from mental health issues.
18. Ms. Bracamontes entered the United States on August 24, 2001, crossing the border in Hidalgo, Texas.
19. Ms. Bracamontes has been continuously present in the United States for more than two years.
20. She has resided in New York City for the past year in a shelter for homeless individuals, and found tremendous support in the LGBTQ+ community
21. She has a care team including a social worker, a case manager, and a psychologist, and began receiving gender affirming medical care a year ago.
22. Ms. Bracamontes has struggled to take medication in pill form, and as such has been receiving hormone therapy injections, with support from her medical clinic, since February 2025. She struggles with depression, anxiety, and displays symptoms of post-traumatic stress disorder from her experiences in Honduras.
23. Ms. Bracamontes is deeply afraid of being deported to Honduras. She was the victim of multiple sexual and physical assaults, and is afraid that she will be targeted again.
24. Ms. Bracamontes has a pending asylum application that was filed with the Executive Office of Immigration and Review on, or about, May 1, 2025.
25. Ms. Bracamontes has a master calendar hearing scheduled for April 15, 2026.
26. On August 7, 2025, ICE detained Ms. Bracamontes when she appeared for a scheduled check-in at the ICE Office.

27. Ms. Bracamontes was detained without being provided the opportunity to obtain access to her gender-affirming medical care.

## **LEGAL FRAMEWORK**

28. The Supreme Court has established that detention can become punitive if it is excessive in relation to the government's regulatory purpose, requiring consideration of conditions of detention and the length of civil confinement. *See Wong Wing v. United States*, 163 U.S. 228, 235 (1896) (finding that "detention or temporary confinement" is "valid" to carry out "the provisions for the exclusion or expulsion of aliens", but that detention involving "imprisonment at hard labor" is unconstitutional without a full criminal trial).

29. The Supreme Court has further held that detention cannot be used as a form of punishment. "Where detention is incident to removal, the detention cannot be justified as punishment nor can the confinement or its conditions be designed in order to punish. Immigration detention is only intended to prevent flight risk, or danger, and not as a form of punishment." *Zadvyas v. Davis*, 533 U.S. 678, 721 (2001).

30. In analyzing whether Ms. Bracamonte's continued detention violates substantive due process, the Court can apply the same six-factor test that is applied to determine whether there has been a violation of procedural due process. *See Doe v. Becerra*, No. 23-cv-04767-PCP, 2024 U.S. Dist. LEXIS 94028 at *13 (N.D. Cal. May 2, 2024) ("In short, due process imposes outer bounds on both the duration and conditions of civil immigration detention.").

31. Ms. Bracamontes substantive due process rights were violated by Respondent when she was unlawfully detained without access to gender affirming medication, and her fifth amendment rights will continue to be violated as long as she remains in detention.

32. In addition to the facts and circumstances of Ms. Bracamonte's detention, she is also at substantial risk of severe harm because the government has shown its unwillingness to comply with its previous transgender care policy.

33. In 2015, Thomas Homan, Acting ICE Executive Associate Director, issued a memorandum providing guidance regarding placement and care of transgender individuals in ICE custody. This memorandum requires that transgender individuals be given access to "continued mental health care and other transgender related health care based on medical need." Initial medical screenings shall include inquiries into the individual's gender self-identification and history of gender-affirming care.

34. On January 21, 2025, President Trump signed an executive order requiring that people in federal custody (including immigration detention) be placed in facilities based on their sex assigned at birth rather than their gender identity. And, shortly thereafter, ICE removed its 2015 "Transgender Care Memorandum" from its website and amended at least three detention facility contracts to remove transgender care requirements.

35. Here, the detention of Ms. Bracamontes, a transgender woman, and sexual assault survivor, creates a significant risk of punishment. Ms. Bracamontes will most certainly be placed in a detention facility that does not comport with her gender identity, creating a heightened risk of sexual assault, physical violence, and abuse. She will not have access to hormone therapy or any gender affirming medical care, or any mental health treatment. This amounts to punishment.

36. Ms. Bracamontes substantive due process rights were violated by Respondent when she was unlawfully detained without access to gender affirming medication.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Fifth Amendment Right to Due Process**

37. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

38. On information and belief, Petitioner is currently being detained and subjected to Expedited Removal in violation of her constitutional rights to due process of law. Petitioner cannot be detained for, or subjected to, Expedited Removal because she has been continuously present in the United States for greater than two years.

39. The Expedited Removal statute largely "precludes judicial review," and therefore challenges to "confinement and removal" under that statute fall within the "core" of the writ of habeas corpus. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1006-07 (2025); *cf. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, (2020) (holding attempt "to obtain additional administrative review of his asylum claim" after Expedited Removal order was outside the "core" of habeas relief).

40. Accordingly, to the extent 8 U.S.C. § 1252(e)(2) purports to preclude habeas review of whether Petitioner is ineligible for detention and removal via Expedited Removal due to the length of his presence in the United States, that limitation violates the Suspension Clause and is void and without effect.

41. Indeed, if there were no judicial review whatsoever of the immigration agencies' determinations that people have been present for less than two years, then the immigration agencies would be free to find that essentially any arrested noncitizen without status is subject to Expedited Removal, in direct violation of the procedures and safeguards required for removal proceedings by the laws and Constitution of the United States.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF CONSTITUTIONAL, STATUTORY, AND REGULATORY RIGHT TO AN ADJUDICATIONFOR PERSECUTION-BASED CLAIMS**

42. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

43. Pursuant to the INA, and to ensure compliance with international treaties to which it is a signatory, including the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, 8 C.F.R. §§ 208.16–208.18, and the Foreign Affairs Reform and Restructuring Act of 1998, 8 U.S.C. § 1231 note, the U.S. government is prohibited from removing noncitizens to countries where they are more likely than not to face persecution or torture. The prohibition on removal is mandatory for anyone who satisfies the eligibility criteria set forth in the applicable statutes and regulations.

44. Petitioner's asylum application alleged she was seeking relief under the Convention Against Torture which demonstrates her eligibility under the applicable statue and regulations.

45. Petitioner has life, liberty, and property interests in an adjudication of her claims for asylum, withholding, and relief under the Convention Against Torture, which would prevent her deportation to a country where she faces persecution and death, and provide her with status and an opportunity to live and work within the U.S.

46. By attempting to imminently deport Plaintiff-Petitioner to the country where she fears persecution and death, Defendants-Respondents are denying Plaintiff-Petitioner her due process right to an opportunity for an adjudication of her motion to reconsider and reopen, and subsequent appeals, violating Plaintiff-Petitioner's statutory and constitutional due process rights under the Fifth Amendment.

47. Numerous courts have enjoined federal immigration officials from deporting individuals prior to an adjudication of relief from deportation. *See*, *e.g.*, *Sean B. v. McAleenan*, 412 F. Supp. 3d 472, 490-91 (D.N.J. 2019) (staying removal to permit petitioner "to remain in the United States until administrative proceedings are concluded" including any appeals of a motion to reopen seeking asylum, withholding, and relief under the Convention Against Torture, because petitioner otherwise "occupies a jurisdictional no-man's land," unable to seek judicial review while her motion is pending, despite her claims that deportation "would expose him to great danger"), *appeal dismissed sub nom.*, No. 19-3548, 2019 WL 8645626 (3d Cir. Dec. 13, 2019); *Compere v. Nielsen*, 358 F. Supp. 3d 170 (D.N.H. 2019) (issuing a stay pending motion to reopen to seek protection from persecution and torture, finding no adequate substitute), *appeal dismissed*, 2019 WL 4598236 (1st Cir., May 30, 2019); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018) (granting stay and explaining that "the haste with which the Government seeks to deport Petitioners creates a high risk of erroneous deprivations of liberty"), *You Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) (granting a stay to permit adjudication of application).

48. To protect Petitioner's constitutional, statutory, and regulatory rights, and to protect her from persecution and torture, the Court should therefore issue a stay pending adjudication of Plaintiff-Petitioner's motion and any appeals.

## THIRD CLAIM FOR RELIEF

## RELEASE PENDING ADJUDICATION
## PURSUANT TO *MAPP v. RENO*

49. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

50. This Court has the "inherent authority" to grant bail to habeas petitioners like Ms. Bracamontes. *See Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001) (holding that federal courts have inherent authority to set bail pending the adjudication of a habeas petition when the petition has raised substantial claims and extraordinary circumstances "make the grant of bail necessary to make the habeas remedy effective").

51. Numerous courts within the Second Circuit have ordered the release of petitioners like Ms. Bracamontes in light of their extraordinary circumstances. *See, e.g.*, *S.N.C. v. Sessions*, No. 18 Civ. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (ordering immediate release of petitioner pending consideration of her claim that her abrupt deportation would violate her due process right to an opportunity to be heard on her application); *Kiaddii v. Sessions*, No. 18 Civ. 1584, at *3 (S.D.N.Y. Mar. 2, 2018) (ECF No. 9) (ordering immediate release when the petitioner presented evidence she may be a U.S. citizen and that "her health has deteriorated while in ICE's custody"); *D'Alessandro v. Mukasey*, No. 08 Civ. 914, 2009 WL 799957, at *3 (W.D.N.Y. Mar. 25, 2009) (ordering immediate release when petitioner had "a number of serious, potentially debilitating health problems").

52. Ms. Bracamontes vulnerability in ICE custody is heightened by her identity as a transgender woman which comprises her access to gender-affirming medical treatment.

53. Notwithstanding a recent decision from the Board of Immigration Appeals (BIA), in the *Matter of Q Li*, detention without the option for a bond hearing is in violation of the Fifth Amendment's Due Process Clause; therefore, Ms. Bracamonte should be entitled to a bond hearing while she pursues her requested relief for asylum from the DHS agency.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

1. Assume jurisdiction over this matter;
2. Order that Petitioner shall not be transferred outside the Southern District of New York
3. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.
4. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment.
5. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately.
6. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

    Grant any further relief this Court deems just and proper.

Respectfully submitted,

/s/ *Amy Leipziger*
Amy Leipziger, Esq.
Free to Be Youth Project-Urban Justice Center
40 Rector Street, 9th Floor
New York, NY 10006
aleipziger@urbanjustice.org
(646)923-8372
*Counsel for Petitioner*

## **VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Cheyla Bracamontes, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are based on information and belief as Ms. Bracamontes is currently detained, and they are true and correct to the best of my knowledge.

Dated this 8th of August, 2025.

s/<i>Amy Leipziger</i><br>
Amy Leipziger, Esq.