```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/1/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

ELDER LEODANI VASQUEZ SALGADO,

                 Petitioner,

            -against-                     25-CV-6524 (VEC)

LADEON FRANCIS, Acting Field Office        OPINION AND ORDER
Director, US Immigrations and Customs
Enforcement, KRISTI NOEM, U.S. Secretary of
Homeland Security, TODD LYONS, Acting
Director U.S. Immigrations and Customs
Enforcement, and PAM BONDI, Attorney
General, *in their official capacities*

                 Respondents.

-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Elder Leodani Vasquez Salgado (a.k.a. Sheila Bracamontes) ("Petitioner") filed this habeas action pursuant to 28 U.S.C. § 2241 challenging the Government's efforts to detain and remove her.[1] *See* Petition for Writ of Habeas Corpus, Dkt. 4 ("Petition"). Petitioner is a transgender woman from Honduras who suffers from mental health issues, stemming in part from repeated attacks she suffered in Honduras due to her gender identity. Amended Petition for Writ of Habeas Corpus, Dkt. 22 ("Am. Petition"), ¶¶ 1–2, 19. Petitioner moved for release pending adjudication of her habeas claims, and the Government requested modification of the Court's Order prohibiting Petitioner's removal from the Southern District of New York while this action is pending. For the following reasons, Petitioner's motion for release pending

---

[1]     The individual Defendants are LaDeon Francis, Acting Field Office Director of U.S. Immigrations and Customs Enforcement ("ICE"), Kristi Noem, U.S. Secretary of Homeland Security, Todd Lyons, Acting Director of ICE, and Pam Bondi, U.S. Attorney General, all in their official capacities (collectively, the "Government").

adjudication of her habeas claims is GRANTED, and the Government's request to modify the Court's Order is DENIED as moot.

## BACKGROUND[2]

I. **Factual Background**

In June 2021, a Border Patrol Agent with U.S. Customs and Border Protection ("CBP") encountered Petitioner near Hidalgo, Texas, and, upon determining that she had unlawfully entered the United States, took her into custody. Zanello Decl., Dkt. 33, ¶ 6. On June 17, 2021, CBP served Petitioner with a Notice and Order of Expedited Removal reflecting the determination of the Department of Homeland Security ("DHS") that she was inadmissible to the United States. *Id.* ¶¶ 6–7. Petitioner was then transferred to ICE custody until July 4, 2021, when she was released from ICE custody on parole following her claim that she feared returning to Honduras. *Id.* ¶¶ 9–11. On August 24, 2021, Petitioner was issued a Notice to Appear charging her with inadmissibility as an alien present in the United States without being admitted or paroled. *Id.* ¶ 12; Petitioner Mem., Dkt. 24, Ex. I.

Since arriving in New York City in early 2024, Petitioner has received a wide range of services, including medical care, mental health care, and gender-affirming care, from a team of professionals. Petitioner Mem. at 3–4, Exs. A through D. Petitioner has also had a handful of encounters with law enforcement. On November 8, 2024, Petitioner pled guilty to Disorderly Conduct, a Violation under New York Penal Law § 240.20. *Id.* at 5. On July 11, 2025, Petitioner was arrested by the New York City Police Department ("NYPD") and charged with Attempted Assault in the Second Degree, a Class E felony, Obstructing Governmental Administration in the Second Degree, a Class A misdemeanor, and Attempted Assault in the

---

[2]  The facts are taken from the Amended Petition and its exhibits, the parties' briefs, and the Declarations submitted by the Government.

Third Degree, a Class B misdemeanor. *Id.* On July 18, 2025, Petitioner was arrested and charged with Assault in the Third Degree, a Class A misdemeanor, and Harassment in the Second Degree, a Violation. *Id.*

At some point in April or May 2025 — after Petitioner's guilty plea to Disorderly Conduct but before her arrests in the summer on more serious charges — Petitioner submitted an asylum application based on her fear of being deported to Honduras.[3] On July 11, 2025, following Petitioner's arrest by the NYPD, ICE filed a Form I-274A Immigration Detainer and prepared a Form I-200 Warrant for Petitioner's Arrest. Zanello Decl. ¶ 25. On July 24, 2025, ICE emailed Petitioner's counsel asking Petitioner to appear for a "check-in" at 26 Federal Plaza, New York, New York. *Id.* ¶¶ 26–27. When Petitioner reported as requested on August 7, 2025, ICE arrested her and held her in custody in its processing space at 26 Federal Plaza. *Id.* ¶ 27.

## II. Procedural History

The Petition, as filed on August 8, 2025, challenged both Petitioner's detention and proposed removal, Petition ¶¶ 37–48, in addition to seeking release pending adjudication and an order prohibiting her removal from the Southern District of New York, *id.* ¶¶ 49–53; *id.* p. 10. That day, the Court issued an Order prohibiting the Government from removing Petitioner from this District. *See* Order, Dkt. 9. Several days later, the Government requested a modification of the Court's Order to allow it to transfer Petitioner to the Jackson Parish Correctional Facility in Louisiana (the "Louisiana Facility"). *See* Letter, Dkt. 10; Letter, Dkt. 16.

ICE held Petitioner in custody at 26 Federal Plaza until she experienced a mental health crisis that caused her to be hospitalized. Am. Petition ¶ 31. After initial treatment on August 17,

---

[3] Petitioner references several different dates for the submission of the application: May 1, 2025, Am. Habeas Petition ¶ 26; April 27, 2025, Petitioner Mem. at 3; and April 24, 2025, Petitioner Mem., Ex. H. The exact date the application was submitted is not material to this Order.

2025, at New York Presbyterian – Lower Manhattan Hospital, she was transferred to New York Presbyterian Westchester Behavioral Health (the "Hospital") the following day. Letter, Dkt. 27, at 1. She apparently consented to hospitalization,[4] and ICE released custody of her. Gov't Mem., Dkt. 31, at 19. ICE asked the Hospital to notify it before discharging Petitioner. *See id.* at 7–8. On September 29, 2025, the parties informed the Court that Petitioner would be discharged from the Hospital on October 1, 2025. *See* Letter, Dkt. 35; Letter, Dkt. 36. Petitioner's counsel was informed by the Hospital that Petitioner would be picked up by two plainclothes officers at the Hospital and returned to 26 Federal Plaza. Letter, Dkt. 36. The Government informed the Court on October 1, 2025, at 3:06 P.M. that ICE had regained custody of the Petitioner. Letter, Dkt. 38.

The Government no longer seeks to detain Petitioner in the Louisiana Facility because that facility now lacks bedspace for her, and the Government claims that the Buffalo Service Processing Center in Batavia, New York (the "Batavia Facility") is better equipped to care for Petitioner's medical needs. Gov't Mem. at 8; Letter, Dkt. 29; Aug. 26, 2025 Conference Tr. at 13:20–24.

Concurrent with the agreed-upon schedule for the parties to brief the Habeas Petition, Petitioner's motion for release pending adjudication, and the Government's motion to modify the Court's Order prohibiting removal, on August 27, 2025, Petitioner filed an Amended Petition.

---

[4] The Government has represented that she was not involuntarily committed and that, for much or all of her stay, she was not in ICE custody. Letter, Dkt. 27, at 2. Based on the fact that she remained in the Hospital for approximately six weeks, the Court assumes that she consented to hospitalization and that her mental health needs were substantial. *See Inpatient Psychiatric and Mental Health Care*, UCHICAGO MED., https://www.uchicagomedicine.org/conditions-services/psychiatry-and-psychology/inpatient-psychiatric-care (last visited Oct. 1, 2025) (average stay for inpatient psychiatric treatment at University of Chicago Medicine is five to seven days); *Inpatient Psychiatry at Tisch Hospital*, NYU LANGONE HEALTH, https://nyulangone.org/care-services/inpatient-psychiatry-at-tisch-hospital (last visited Oct. 1, 2025) (average stay for inpatient psychiatric treatment at NYU Langone Hospital is seven to eight days).

*See* Dkt. 22.  The Amended Petition no longer challenges Petitioner's removal from the United States.

Instead, Petitioner now argues that her detention violates her substantive and procedural due process rights: (1) because she is neither a danger to the community nor a flight risk, Am. Petition ¶¶ 51–55; (2) because detaining her in an all-male facility and without access to hormone therapy constitutes deliberate indifference to her medical needs, *id.* ¶¶ 56–60, 66–74; and (3) because she was detained without notice, explanation or an opportunity to be heard, *id.* ¶¶ 61–65.  Petitioner also alleges violations of Section 504 of the Rehabilitation Act and its implementing regulations, 29 U.S.C. § 794; 6 C.F.R. § 15.30 *et seq.*; 28 C.F.R. § 39.130 *et seq.*, and the Administrative Procedure Act for failing to comply with those provisions of the Rehabilitation Act.  *Id.* ¶¶ 75–111.  Finally, Petitioner requests release pending adjudication of the Amended Habeas Petition pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001).  *Id.* ¶¶ 112–16.

## DISCUSSION

### I.     The Court Has Jurisdiction Over the Amended Habeas Petition

A court shall not grant a writ of habeas corpus pursuant to Section 2241 unless the petitioner is "in custody."  28 U.S.C. § 2241(c).  The requirement that the petitioner be in custody is a "jurisdictional prerequisite" for the issuance of the writ.  *Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003).  The custody requirements "preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty;" the use of the writ is "limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate."  *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345, 351 (1973).

Although habeas relief is typically sought by "'persons held in actual, physical custody in prison or jail,' the Supreme Court has affirmed 'that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.'" *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (quoting *Jones v. Cunningham*, 371 U.S. 236, 238, 240 (1963)). Thus, "a variety of nonconfinement restraints on liberty satisfy the custodial requirement" if sufficiently "severe." *Id.* at 216 (collecting cases).

There is no doubt that Petitioner was in custody when she originally filed for habeas relief; ICE was holding her at 26 Federal Plaza. *See* Petition. Whether Petitioner was in custody when she filed the Amended Petition is a closer question. The Government's apparent plan to arrest her upon her discharge from the Hospital, and the fact that she is unquestionably back in ICE custody, militate in favor of finding jurisdiction.

The Supreme Court has "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Hensley*, 411 U.S. at 350. A petitioner is in custody for the purposes of the habeas statute when the Government exercises control over the petitioner's liberty. *See id.* at 348–53 (petitioner released on bail was obligated to appear anywhere ordered by the releasing court); *Garlotte v. Fordice*, 515 U.S. 39, 45–47 (1995) (petitioner serving consecutive sentences in custody can challenge later sentence while serving earlier sentence); *Nowakowski*, 835 F.3d at 216 (collecting cases recognizing nonconfinement restraints, including probation requirements, post-release supervision, community service, programming, and license revocation). Petitioner was not "at her liberty to go where she pleased" during her treatment at the Hospital, *Jones*, 371 U.S. at 239 (citation omitted), as ICE

seems to have had an arrangement with the Hospital pursuant to which it would inform ICE of Petitioner's anticipated discharge date,[5] and ICE intended to take her into custody immediately upon her discharge from the Hospital, Letter, Dkt. 36; *cf. Carafas v. LaVallee*, 391 U.S. 234, 237–39 (1968) (expiration of petitioner's sentence before final adjudication of habeas claims did not moot claims).[6]  The plan to re-arrest Petitioner evinces the very control that lies at the heart of the custodial requirement, and the imminence of her arrest and subsequent detention carries that "special urgency" justifying the exercise of jurisdiction over her habeas claims. *Hensley*, 411 U.S. at 351.

## II. Petitioner is Ordered Released Pending Adjudication of Her Habeas Claims

To determine whether to release a habeas petitioner pending adjudication of her claims, courts consider whether: (1) "the petition raises substantial claims;" (2) "extraordinary circumstances exist[];" and (3) those circumstances "make the grant of bail necessary to make the [habeas] remedy effective." *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007) (quoting *Mapp*, 241 F.3d at 230) (internal quotation marks omitted).  This is a "difficult" standard to meet.  *Mapp*, 241 F.3d at 226.

---

[5]     The Court notes that although the Government represented that ICE had not filed a detainer with the Hospital, Letter, Dkt. 27, at 2 (it is not clear to the Court whether that is something ICE can actually do), there was a high level of cooperation between the Government and the Hospital, suggesting there may have been an agreement, perhaps just by way of a wink or a nod, that Petitioner would not be allowed to check herself out and leave the Hospital without ICE being notified.

[6]     ICE's position on whether it would take Petitioner into custody upon her discharge from the Hospital appears to have evolved while she was hospitalized.  On September 10, 2025, the Government represented that ICE did not intend take Petitioner back into ICE custody unless the Court modified its Order prohibiting her removal from the Southern District of New York.  Letter, Dkt. 29.  On September 29, 2025, the Government filed a letter notifying the Court that it expected Petitioner to be discharged from the Hospital on October 1 and urging the Court to expedite decision on its motion to lift the Order and permit her transfer to the Batavia Facility.  Letter, Dkt. 35.  The Hospital, however, indicated to Petitioner (or her attorney) that Petitioner would be arrested by officers upon her discharge and would be returned to 26 Federal Plaza, seemingly in contravention of the Government's prior representation to the Court.  Letter, Dkt. 26.

### A. Petitioner Raises Substantial Claims

Neither party dwells on what renders a claim "substantial" enough to satisfy the first prong, and the Second Circuit has not often opined on the question. In *Mapp*, the petitioner raised a substantial claim when he challenged a deportation order, "the propriety of which [was] clearly open to question." 241 F.3d at 230. Courts have found a substantial claim for relief to exist when a petitioner points to "clear case law establishing the likelihood of success." *Evangelista v. Ashcroft*, 204 F. Supp. 2d 405, 407 (E.D.N.Y. 2002). Although demonstrating a likelihood of success is sufficient to raise a substantial claim, it does not appear to be necessary. In *Mapp*, for example, the deportation order was simply "open to question." 241 F.3d at 230. Further, even though *Evangelista* repeated the "likelihood of success" standard, the court found the claim substantial when the issue was then "on appeal before the Second Circuit," and it was a 50-50 proposition whether the petitioner's position would become law. 204 F. Supp. 2d at 407. The Second Circuit has defined "substantial question" in interpreting the statute governing bail pending appeal as "one of more substance than would be necessary to a finding that it was not frivolous," "a close question," or "one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citation and internal quotation marks omitted)).

Petitioner has raised "at least one substantial claim." *United States v. Nkanga*, 452 F. Supp. 3d 91, 95 (S.D.N.Y. 2020). She asserts that detention violates her rights to substantive due process because she does not present a danger to the community or a flight risk, and to procedural due process because she was detained without notice, explanation, or an opportunity to be heard. Am. Petition ¶¶ 51–55, 61–65. The question of which statute governs her detention, and the extent of due process to which she is entitled, requires a detailed analysis of the facts — some of which are not properly before the Court. Furthermore, courts in this District have

8

reached differing outcomes even within the application of those statutes. Because the question is a close one, Petitioner's due process claims are substantial.[7]

Petitioner argues that she is being detained pursuant to Section 1226(a). Petitioner Mem. at 13. Under that provision, a person "may be arrested and detained pending a decision on" the individual's removal from the United States. 8 U.S.C. § 1226(a). Individuals detained pursuant to Section 1226(a) "have not received a final decision as to whether they are to be removed." *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020). Section 1226(a) applies to "individuals who have not yet been determined removable" and "to those held pending an appeal" of a removal order. *Id.* at 849 n.6. Although the Attorney General has discretion to detain noncitizens pending removal, "[c]laims that the discretionary process itself was constitutionally flawed are cognizable" on habeas. *Id.* at 849–50. Such claims are governed by a three-factor balancing test: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 851 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).[8]

---

[7] The Court refers only to those due process claims detailed in paragraphs 51 through 55 and 61 through 65 of the Amended Petition, *see* Am. Petition ¶¶ 51–55, 61–65; the Court does not reach Petitioner's due process claims premised on inadequate medical care and deliberate indifference.

[8] Petitioner's claim is strong if she is found to be detained pursuant to Section 1226(a). Where, as here, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment," the first *Mathews* factor cuts in the petitioner's favor. *Velasco Lopez*, 978 F.3d at 851. Likewise, the failure to exercise discretion when deciding to detain Petitioner ran a high risk of wrongful deprivation of that interest, as she did not have the opportunity to be heard on whether she is a flight risk or a danger to the community. *Id.* at 853. The Government does not suggest that any discretion was exercised, asserting instead that "[a] custody redetermination was made;" the Government offers no explanation of who made the decision, how the decision was made, or what factors that person considered. Zanello Decl. ¶ 27. Finally, the Government's interest in detention is justified to prevent flight and danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001). Petitioner's limited criminal history and ties to the community, including those necessary for the

The Government counters that Petitioner is in fact being detained pursuant to Section 1225(b) and is, therefore, subject to mandatory detention.  For individuals subject to mandatory detention, the Government argues, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); that is to say, little to no process at all regarding detention.  "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2)(A).  Under the relevant regulations, "an arriving alien is an applicant who is also doing something: coming or attempting to come into the United States."  *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025) (citation and internal quotation marks omitted).  At least one other court in this District has found that a petitioner is subject to Section 1226(a), rather than Section 1225(b), where, as here, the Notice to Appear marked the petitioner not as "arriving" but instead as "present in the United States."  *Id.* at *7 n.9, *9; Petitioner Mem. Ex. I.  That said, the determination in that case was based in part on a fact-intensive analysis of the Government's consistent treatment of the Petitioner as detained pursuant to Section 1226(a).  *Id.* at *4–5.  Although the Government asserts that Petitioner is being detained pursuant to Section 1225(b), Zanello Decl. ¶ 27, it has not provided any documentation to support that claim, such as the Form I-200 Arrest Warrant or the Form I-286 Notice of Custody Redetermination, even though the former is referenced in the Zanello Declaration, *id.*[9]

---

maintenance of her medical and mental health and the provision of gender-affirming care, would militate in favor of finding that whatever risks she poses can be mitigated by conditions short of detention.  *See* Petitioner Mem. Exs. A–D.

[9]     Even if the Court were to conclude that Petitioner is subject to Section 1225(b), it is not certain that it would agree with the Government that *Mezei* precludes Petitioner's due process claims entirely.  345 U.S. at 212.  Several courts in this District have limited *Mezei* to its specific facts or declined to extend it to categorically bar any

In the alternative, the Government argues that Petitioner is subject to mandatory detention under Section 1226(c)(1)(E). With the recent passage of the Laken Riley Act, Congress mandated detention of any individual who: (1) is inadmissible because he or she is present in the United States without being admitted or paroled, *see* 8 U.S.C. §§ 1226(c)(1)(E)(i), 1182(a)(6)(A)); and (2) is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any . . . assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. § 1226(c)(1)(E)(ii). Petitioner clearly satisfies the first requirement based on the Notice to Appear issued to her by ICE. Petitioner Mem. Ex. I. As to the second requirement, the Arrest Report indicates that Petitioner was arrested after assaulting a law enforcement officer while the officer attempted to place her inside a holding cell. Zanello Decl. ¶ 21, Ex. C. Petitioner, however, was only charged with Attempted Assault in the Second Degree, a felony that contemplates attempting, not completing, the essential elements of assault. Am. Petition Ex. D; N.Y. Penal Law §§ 110.00 (attempt requires "intent to commit a crime" and conduct that "tends to effect the commission of a crime"); 120.05(3) (requiring "intent to prevent . . . a police officer . . . from performing a lawful duty" and causing "physical injury").

To determine whether Petitioner should be released pending adjudication of the habeas petition, the Court need not — indeed, without relevant documentation, perhaps cannot — resolve which statutory provision applies to Petitioner's detention or detail the analysis under that provision. Rather, in light of the above discussion of the various provisions and differing

---

due process claims. *See Brissett v. Decker*, 324 F. Supp. 3d 444, 450–51 (S.D.N.Y. 2018); *Birch v. Decker*, No. 17-CV-6769 (KBF), 2018 WL 794618, at *4 (S.D.N.Y. Feb. 7, 2018); *Bermudez Paiz v. Decker*, No. 18CV4759GHWBCM, 2018 WL 6928794, at *10–11 (S.D.N.Y. Dec. 27, 2018); *but see also Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647–48 (S.D.N.Y. 2018).

outcomes reached by courts in this District, the Court concludes that Petitioner has made an adequate showing on her due process claims, and those claims are substantial.

### B. Extraordinary Circumstances Are Present

Petitioner's severe mental health issues combined with her status as a transgender female constitute extraordinary circumstances. As an initial matter, detention in this context is not punitive; it can be justified, then, only to prevent a detainee's flight or to mitigate any danger the individual may pose to the community. *Zadvydas*, 533 U.S. at 690–91. As discussed above, *supra* note 8, the Court concludes that Petitioner is not a flight risk; the resources and support structure necessary for the maintenance for her mental health and the provision of gender-affirming care are in New York, and she wants to stay in the United States. *See* Petitioner Mem, Exs. A–D. As to dangerousness, Petitioner's criminal history is by no means spotless,[10] but she has made an adequate showing that her past encounters with law enforcement are infrequent and downstream of her mental health issues. Allowing her to continue treatment is just as effective at mitigating danger to the community as detaining her.

Against that backdrop, subjecting Petitioner to further detention in the Batavia Facility pending adjudication of her habeas claims would serve only to worsen her mental health. When it is reasonable to conclude that detention would worsen a petitioner's health, extraordinary circumstances are present. *See S.N.C. v. Sessions*, No. 18 CIV. 7680 (LGS), 2018 WL 6175902,

---

[10] Although the Government asserts that Petitioner has two known arrests for gun possession, Zanello Decl. ¶ 19, the Court finds the evidence supporting that fact to be wanting. An NYPD background report attached as Exhibit A to the Zanello Declaration includes a table entitled "Officer Safety." Zanello Decl., Ex. A, at 1. The first row of that table states "Gun Charge History – Yes (2)." *Id.* Nowhere in the Government's submission is there any indication when or where Petitioner was charged with possession of a gun, and the Zanello Declaration does not explain how that field of the report is completed. Further undercutting the accuracy of the assertion that Petitioner has two known arrests for gun possession, Zanello represents that Exhibit A reflects all of the NYPD records on Petitioner, Zanello Decl. ¶ 19, but there is no indication elsewhere in the report of any arrest of Petitioner for possession of a gun.

at *6 (S.D.N.Y. Nov. 26, 2018) (collecting cases). The licensed social worker who treated Petitioner at the Hospital indicated that Petitioner suffers from bipolar disorder and post-traumatic stress disorder. Am. Petition Ex. A. Her mental health issues stem from a history of emotional, physical, and sexual abuse inflicted on her by men due to her gender identity, resulting in suicidal ideations and other symptoms. Am. Petition Ex. C. She also receives hormone therapy through injections as part of her gender transition. Am. Petition Ex. B. Her psychological conditions would be exacerbated by detention — either through the kind of detention imposed at 26 Federal Plaza that led to six weeks of hospitalization to stabilize Petitioner, *see* Letter, Dkt. 26, or through the Government's proposal that she be detained in solitary confinement in the all-male Batavia Facility, Gov't Mem. at 8.[11]

Two social workers who treated Petitioner prior to her detention, along with her case manager from the shelter where she lived, recommend against her detention. Petitioner Mem. Exs. A, B, and D. In the same vein, the social worker who treated her at the Hospital states she should not be considered for solitary confinement in an all-male facility. Am. Petition Ex. A. The medical doctor who was treating her before ICE arrested her recommends continuing the treatment plan and enhanced support she has received since February 2025 outside of detention. Petitioner Mem. Ex. C. In contrast, the Government relies on the declaration Dr. Zelikson, a Public Health Services Officer who has never examined Petitioner. Dr. Zelikson concludes that

---

[11] The Government asserts that the Special Housing Unit in Batavia is not "solitary confinement." Gov't Mem. at 8. With all due respect, confinement in a single cell with the ability to leave the cell, apparently alone, for only two hours per day, is, in the Court's view, solitary confinement. That assessment is not altered by the fact that the Government would offer her the Hobson's Choice between being confined in solitary confinement in the Special Housing Unit or not in solitary confinement in General Population. *Id.* It does not take an expert in penological issues to conclude that a smallish (5'6" tall) transgender woman who is undergoing hormone treatment to suppress her testosterone levels and to boost her estrogen levels would not be safe in general population in a male prison. Accordingly, the Court affords no weight to the Government's argument that any solitary confinement would be Petitioner's choice.

the plan to detain Petitioner at Batavia "is a reasonable accommodation of Petitioner's medical needs." Zelikson Decl., Dkt. 32, ¶ 36.[12] Dr. Zelikson reiterates the Government's nonsensical argument that the Special Housing Unit at Batavia is not "solitary confinement" and breezily notes: "[i]f the Petitioner suffers mental health decomposition while at the facility, [she] would be examined and referred to a hospital for stabilization." *Id*. ¶ 37.  The Court does not find Dr. Zelikson's conclusion that solitary confinement in an all-male prison is a reasonable accommodation of Petitioner's medical needs to be based on the evidence or to be persuasive.

Because the Court finds that the credible evidence demonstrates that the proposed detention conditions would aggravate Petitioner's well-established mental health problems, extraordinary circumstances are present.

### C. Release is Necessary to Make the Habeas Remedy Effective

The presence of extraordinary circumstances alone, of course, does not entitle Petitioner to release pending a decision on her habeas petition.  Rather, Petitioner must explain why continued detention would affect the "Court's ultimate consideration of the legal issues presented in" her habeas petition.  *Elkimya*, 484 F.3d at 154 (requiring a reason beyond "convenience"). "Severe health issues have been the prototypical but rare case of extraordinary circumstances that justify release pending adjudication of habeas."  *Coronel v. Decker*, 449 F. Supp. 3d 274, 289 (S.D.N.Y. 2020).

Unless Petitioner is released, she faces significant risk that her mental health will deteriorate, undermining her goal of obtaining constitutionally adequate medical care while she litigates the lawfulness of ICE's attempts to remove her.  *See id.*  Release also promotes Petitioner's access to her counsel as she seeks asylum and is more likely to lead to stability in her

---

[12]  Dr. Zelikson's Declaration does not elaborate on his or her qualifications.

mental health that is necessary for her to participate in the litigation of her other claims in this action. *S.N.C.*, 2018 WL 6175902, at *6 ("Release would allow Petitioner to access trafficking-related counselling to manage her symptoms and to care for her eight children. These circumstances are extraordinary and require that Petitioner be released before her health declines past the point at which she is unable to adjudicate her visa applications.").

Furthermore, although health issues and unduly long detention without a bond hearing are indeed the paradigmatic examples of extraordinary circumstances justifying release, Gov't Mem. at 25, those are not the only circumstances where bail is necessary to make the habeas remedy effective. *See, e.g.*, *Kiadii v. Decker*, 423 F. Supp. 3d 18, 20–21 (S.D.N.Y. 2018) (granting bail pending adjudication where petitioner detained by immigration authorities credibly claimed United States citizenship). Petitioner claims, and the Government concedes through its reliance on mandatory detention statutes, that she is being detained without the Government adhering to the discretionary framework established by Section 1226(a), and without the opportunity to appeal that custody determination in a bond proceeding before an immigration judge. *See Lopez Benitez*, 2025 WL 2371588, at *3 (citing 8 C.F.R. § 1236.1(d)(1)), *10 ("If all noncitizens subject to [Section 12226(a)] could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk.").

An individual detained pursuant to Section 1226(a) who identifies some defect in the process governing her detention can raise that defect in a habeas action seeking release. *See Velasco Lopez*, 978 F.3d at 851–57 (affirming grant of petition in challenge to procedures that resulted in an unduly long detention). In this case, Petitioner asserts that she is being held

wrongfully because ICE did not make a discretionary decision to deny her liberty while deciding whether to remove her from the country. If this Court does not release her pending adjudication of that claim and she prevails, her habeas remedy will be ineffective as it will have failed to prevent her from the very unlawful detention to which she is objecting. Petitioner's interest can only be vindicated if, assuming she is correct that Section 1226(a) applies to her immigration status, she receives an individualized assessment of her risk of flight and dangerousness *before* she is deprived of liberty. Given the significant risk that her mental health will decompensate if she is held in custody as planned by the Government, release is necessary to make the habeas remedy effective.[13]

## CONCLUSION

For the foregoing reasons, Petitioner's motion for release pending adjudication of her habeas petition is GRANTED. To the extent the Government contends that additional conditions are necessary to mitigate any risk to the community (e.g., the sort of standard conditions that are imposed as part of pretrial release in a criminal case; an order that she continue to participate in mental health treatment), the Court will consider imposing such conditions. The Government's motion to modify the Court's Order prohibiting her removal from the Southern District of New York is DENIED as moot.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 23.

The Court reserves decision on the Amended Petition's habeas claims. The Court recognizes that the parties' briefs were attempting to hit a moving target. Petitioner was first detained at 26 Federal Plaza before her transfer to the Hospital; her return to 26 Federal Plaza is

---

[13] Lest there by any question, the Court is not opining that all mentally ill ICE detainees or all transgender ICE detainees are entitled to release while their habeas claims are pending. The confluence of facts presented here, however, given the Government's insistence that it will only hold Petitioner in an all-male facility, dictate the result in this case.

either imminent or has occurred. The Government recognizes that 26 Federal Plaza is not an appropriate place for her to be detained, but limits on bedspace shifted the Government's detention plans during the briefing of the Amended Petition. As a result, some aspects of the habeas claims challenge Petitioner's detention at 26 Federal Plaza, other aspects challenge her previously contemplated detention at the Louisiana Facility, and others still argue against her future detention at the Batavia Facility.

With the benefit of the stability afforded by Petitioner's release pending adjudication, the parties can better assess Petitioner's due process claims without the earth shifting beneath the case. Specifically, the Court would appreciate the parties' views on whether Petitioner's claims rooted in her treatment at 26 Federal Plaza are now moot. The Court also has concerns that her claims challenging the conditions of her future detention may not be ripe (or are otherwise better addressed through some vehicle other than habeas). *Compare Simmonds*, 326 F.3d at 357 ("Prudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial."), *with Hensley*, 411 U.S. at 353 ("[W]e would badly serve the purposes and the history of the writ to hold that under these circumstances the petitioner's failure to spend even 10 minutes in jail is enough to deprive the District Court of power to hear his constitutional claim.").

By **Friday, October 24, 2025**, the parties are directed to meet and confer and file a joint letter, not to exceed two pages, indicating whether they stipulate to dismissal of any of Petitioner's claims and their proposal for next steps in this case, including whether either party is seeking discovery. If Petitioner wishes to dismiss some claims, she is granted leave to file a

Second Amended Petition that narrows her claims to only those in dispute. Any such Second Amended Petition must be filed not later than **Friday, October 31, 2025**, and must include a red-lined version showing what has changed since the First Amended Petition. If the parties cannot agree and wish to brief the Court on its jurisdiction to hear Petitioner's claims, the Government's deadline to file its papers is **Friday, November 7, 2025**, and Petitioner's deadline to respond is **Friday, November 14, 2025**. Neither submission should exceed five pages.

In addition, to better assess the arguments regarding the statutory basis for Petitioner's detention, by **Friday October 24, 2025**, the Government must file via ECF a declaration attaching any papers relevant to the Government's decision to detain Petitioner not already provided, including, but not limited to, the Form I-200 Arrest Warrant or the Form I-286 Notice of Custody Redetermination, if applicable.

The Government must confirm to the Court, through a filing on ECF, **not later than 11:59 P.M. on October 1, 2025**, that Petitioner has been released from custody.

Standing Order M10-468 staying civil cases in which the U.S. Attorney's Office for the Southern District of New York has appeared as counsel of record is superseded by the aspect of this Order requiring Petitioner's release and the requirement that the Government confirm today that this Order has been complied with. As to all other obligations in the Order, Standing Order M10-468 shall be in effect.

**SO ORDERED.**

Date:  October 1, 2025
       New York, New York

_____
VALERIE CAPRONI
United States District Judge